```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| MAHOMA SOSA, | |
| Plaintiff, | HONORABLE JOSEPH E. IRENAS |
| | CIVIL ACTION NO. 05-5692 |
| v. | |
| | **OPINION** |
| MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF HOMELAND SECURITY; (TRANSPORTATION SECURITY ADMINISTRATION; U.S. IMMIGRANT AND CUSTOMS ENFORCEMENT); | |
| Defendants. | |

**APPEARANCES:**

THE PEARCE LAW FIRM
By: Edith A. Pearce, Esq.
1601 Sansom Street, Suite 2C
Philadelphia, Pennsylvania 19103
    Counsel for Plaintiff

CHRISTOPHER J. CHRISTIE, United States Attorney
By:  Daniel J. Gibbons, A.U.S.A.
401 Market Street, 4th Floor
Camden, New Jersey 08101
    Counsel for Defendant

**IRENAS**, Senior District Judge:

    Plaintiff, Mahoma Sosa ("Sosa"), a former United States Federal Air Marshal ("FAM"), brings this Title VII employment discrimination suit against her former employer, Transportation Security Administration.[1]  Sosa asserts that she was subjected

---

[1] The Federal Air Marshal Service is the primary law enforcement entity within the Transportation Security Administration, which is a component of the Department of Homeland Security.  For convenience, the Court will collectively refer to Defendants as "the government."

to a hostile work environment, and ultimately terminated from her employment, on account of her race (Hispanic), national origin (Puerto Rican), and gender (female).  The government moves for summary judgment.  For the reasons stated herein, the government's motion will be granted.[2]

**I.**

During June and July, 2003, Sosa participated in "Phase II" training at the FAM training center in Atlantic City, New Jersey.[3]  The training program consisted of four weeks of training in firearms proficiency, aircraft countermeasures proficiency, FAM tactics proficiency, and physical fitness.  (Phase II Student Handbook, Sosa Ex. 7).  After trainees passed Phase II training, they graduated to placements in field offices and were placed in "operational flight status." (Id.).

On July 31, 2003, Sosa received formal notice that she had failed Phase II training and was therefore terminated from service with the Federal Air Marshals.  (Sosa Ex. 6).  The notice states,

> This is a notice that you are being terminated from your position and from the Federal Service effective the date of this letter, because you failed Phase II training in Atlantic City.  Specifically, on July

---

[2]  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

[3]  Phase II training follows successful completion of the "FAM Basic Training Program."  (Sosa Ex. 7)  Sosa successfully completed basic training.

> 17, 2003, you did not achieve a qualifying score in your Tactics training. You received counseling and remedial training that afternoon and on July 18, 2003, you were re-evaluated, but did not receive a qualifying score. You were retained for an additional week of training and you were again evaluated on July 24, 2003. During the evaluation you did not receive a passing score. This action is being taken in accordance with Transportation Security Administration (TSA) Human Resources Management Letter 300-2, Interim Policy on Probationary Period. . . .
>
> On April 24, 2003, you signed the line "I ACCEPT THE POSITION" on an offer of Employment Letter that stated, "All Federal Air Marshals must serve a probationary period to be completed 12 months after the granting of credentials" . . . Your Expected Appointment under these conditions was effective May 4, 2003. The purpose of the probationary period is to serve as the final step in the interview and examination process of new employees.

(Id.).

A memorandum dated July 28, 2003, from Mitch Levin, Branch Chief of Tactics training, to Bob Clark, Assistant Director of FAM Training, details Sosa's performance in Tactics training. Sosa was first tested on July 17, 2003, and received a score of 10 out of a possible 100 points.[4] A passing score was 85 points. (Levin Ex. 1). Sosa received counseling and remedial training and was retested the following day, July 18, 2003. She only scored 40 points. (Id.; Sosa Ex. 3). She was counseled again, and then received an additional week of training with a new class

---

[4] Levin testified that each student starts the evaluation with 100 points, and then points are deducted based on the trainee's performance. (Levin Dep. at 33).

3

of trainees. (Levin Ex. 1). On July 24, 2003, she failed the evaluation a third time, with a score of 75. (Id.). Sosa claims that Levin, a Caucasian male, discriminated against her on account of her race, national origin, and gender, by unfairly grading her on the Tactics evaluation.

Sosa also claims that she suffered a hostile work environment while she was training at the Atlantic City facility. Specifically, she complains that two of the Physical Training instructors, Mark Royer and Serge Potapov, both Caucasian males, constantly made "vicious" and "demoralizing" comments to Sosa in front of her fellow trainees.

Sosa claims that both men targeted her with insults related to her physical fitness, and required her to do extra physical training. According to Sosa, Potapov would single her out to do push-ups and sit-ups in front of the class. (Sosa Dep. at 89). On one occasion, when Sosa was the last trainee to finish a training run, Potapov allegedly said, "Always behind, always waiting for your freaking ass, I'm tired of this shit." (Sosa Dep. at 92). During another run, Royer allegedly said to Sosa, "You're weak. You don't belong here. You know you want to quit. Why don't you do us a favor and do it." (Id. at 98). At some other unspecified time, Sosa claims Potapov told her that "[his] grandmother was tougher than [her]." (Sosa Ex. 9)

Lastly, Sosa complains of an incident that occurred in the

cafeteria.  She states that Potapov "screamed" at her in the cafeteria for eating "a half philly cheese steak sandwich and a Diet Coke."  (Id.).  According to Sosa, Potapov yelled that he "could not believe after all the exercising and information provided in nutritional classes, that [Sosa] would be eating that kind of garbage."  (Id.).  Then he allegedly said, "Just get out of my face.  You make me sick."  (Id.).

Sosa filed her EEO Complaint on February 4, 2004, and then filed the instant suit on December 5, 2005.

**II.**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e) (A party opposing summary judgment cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or depositions setting forth "specific facts showing that there is a genuine issue for trial.").

"Summary judgment, of course, looks only to admissible evidence."  *Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir. 1987); *see also Blackburn v. United Parcel Service*, 179 F.3d 81, 95 (3d Cir. 1999)(noting that hearsay statements that are inadmissible at trial should not be

6

considered when determining whether Plaintiff has established a triable issue of fact).

### III.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . " 42 U.S.C. § 2000e-2(a)(1).

Sosa must establish a prima facie case of discrimination by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). She must show that (1) she is a member of a protected class; (2) she was qualified for the job from which she was discharged, and (3) others, not in the protected class, were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

If Sosa establishes a prima facie case, the burden shifts to the government to produce a non-discriminatory reason for her discharge. *Id.* at 804-05. Thereafter, Sosa must establish by a preponderance of the evidence that the government's reasons were merely pretext for discriminatory intent. *Id.*

7

A.

Sosa has failed to establish a prima facie case for two reasons.  First, she has failed to put forth evidence from which a reasonable factfinder could conclude that she was qualified for FAM service.  Second, she can point to no evidence from which a factfinder could conclude that she was allegedly discriminated against "because of" her national origin, race, or gender.

(1)

The undisputed evidence shows that Sosa never passed a Tactics evaluation.[5]  The Phase II training student handbook clearly indicates that successful completion of Tactics training is a prerequisite to graduating from Phase II training, therefore the undisputed evidence shows that Sosa was not qualified for FAM service.

While Sosa testified at her deposition that she believes that Levin unfairly graded her tactics evaluation, her bald assertion is insufficient to create a jury question as to her qualification for FAM service.  Sosa's Tactics evaluation grade sheets indicate that Levin was only one out of three different instructors evaluating her performance.  Sosa fails to account

---

[5] In addition to the three tactics evaluations discussed in the termination notice and Levin's memorandum, Sosa has submitted grading sheets from three other tactics evaluations where she scored a -5, 25, and 70 points, respectively, out of a possible 100 points.  (Sosa Exs. 1, 2, & 5).

8

for why the other two instructors also gave her failing grades.[6]

(2)

Additionally, nothing in the record supports an inference that any of the actions taken by Levin, Royer or Potapov were causally connected to Sosa's race, national origin, or gender. *See generally, Fuentes v. Perskie,* 32 F.3d 759, 763, 765 (3d Cir. 1994) ("The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias. . . . [T]he factual dispute at issue is whether discriminatory animus motivated the employer.").

With regard to race and national origin, there is simply no evidence of any kind that could support an inference of discrimination.  The fact that Sosa is Hispanic and Levin, Royer, and Potapov are Caucasian does not satisfy Sosa's summary judgment burden.

Likewise, Sosa has put forth insufficient evidence that Levin's alleged unfair grading was gender-motivated.  By relying on unrelated complaints made by three other female FAMS at the Atlantic City training center, Sosa attempts to show that the general environment at the training center was hostile to women.

---

[6] With regard to the other instructors, Sosa testified, "A.  We had different instructors.; Q.  Do you remember any of their names?; A.  No.; Q.  Can you describe any of them?; A.  The only thing I can remember is that they were Caucasians and they were males. They were males. . . . ; Q.  Okay. And you don't recall any of their names?; A.  I just remember Mr. Levine." (Sosa Dep. at 35-36).

9

Aside from the questionable admissibility of a majority of this evidence,[7] two of the complaints do not even mention Levin. The third states only that Levine failed another female trainee on her Tactics evaluation. No triable issue of fact exists as to whether Levin was motivated by Sosa's gender.

Lastly, viewing Royer's and Potapov's actions and comments in the light most favorable to Sosa, a reasonable factfinder could not conclude that they were motivated by Sosa's gender. Sosa admitted that during training runs, "I was usually the last one. . . . I was basically most of the time, yes, almost last." (Sosa Dep. at 88) When she began Phase II training, her training file shows that she was 5 feet, 4 inches tall, weighed 173 pounds, and ran 1.5 miles in 20 minutes, 55 seconds. (Levin Ex. 2) After almost four weeks of training, Sosa weighed 172 pounds and ran 1.5 miles in 20 minutes, 49 seconds. (Id.)

Thus, the undisputed evidence demonstrates that Sosa was relatively out-of-shape and that Royer and Potapov singled her out on the basis of her individual physical performance. While Sosa vaguely asserts that "other students" were not singled out for such harsh treatment, she has no specific evidence of men in

---

[7] The complaints contain hearsay and double hearsay statements, and their relevance to this case is highly questionable. Indeed, in its reply brief, the government asks the Court to strike from the record two of Sosa's exhibits. The Court finds it unnecessary to strike the exhibits, however, because even considering them, summary judgment is appropriate.

a similar position who were treated more favorably than she.[8]

Accordingly, Sosa has failed to establish a prima facie case of discrimination, and summary judgment for the government is warranted.

B.

Alternatively, even if Sosa could make out a prima facie case, she can point to no evidence tending to prove that the government's proffered reason for her termination was pretextual.

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action. . . . [the] plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.

*Fuentes*, 32 F.3d at 764-65.

As discussed *supra,* Sosa was terminated from FAM service because she could not successfully complete her training. She does not dispute the record evidence which shows that she failed all of her tactics evaluations, administered by three different

---

[8] At one point in her deposition, Sosa testified that "A:  There was another student that also stood most of the time behind, but he was never written up. . . . Q.  What was his name?; A.  I don't remember the name. I don't remember the name. I don't remember the name." (Sosa Dep. at 88-89) This testimony alone is insufficient to create a triable issue of fact.

11

people, over the course of her five week training.  Indeed, Sosa makes no argument that the government's reason for her termination should not be believed.

Because the record does not support an inference of pretext, summary judgment for the government is warranted on this ground as well.

### IV.

For the reasons sated above, summary judgment for the government will be granted on all claims.  An appropriate order will be issued.

Date: March 21, 2008

                                            s/ Joseph E. Irenas
                                            JOSEPH E. IRENAS, S.U.S.D.J.